488 So.2d 1032 (1986)
Jacqueline Sue Thorp WALL, Plaintiff-Appellant,
v.
SISTERS OF CHARITY OF the INCARNATE WORD, aka Schumpert Medical Center, Defendant-Appellee.
No. 17703-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
*1033 Donald R. Miller, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Alex S. Lyons, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
LINDSAY, Judge.
Plaintiff, Jacqueline Sue Thorp Wall, instituted this worker's compensation suit against her employer, Sisters of Charity of The Incarnate Word, a/k/a Schumpert Medical Center, (Schumpert), to recover additional worker's compensation benefits, penalties and attorney's fees as a result of an employment-related accident occurring on November 1, 1981. The trial court granted a judgment in favor of the defendant, Schumpert. The plaintiff has appealed from this adverse judgment alleging that the trial court erred in denying her claims of total and permanent disability, or in the alternative, permanent partial disability. The plaintiff further alleges that the trial court erred in failing to award penalties and attorney's fees for the arbitrary and capricious refusal of the defendant to pay *1034 any further worker's compensation benefits. We disagree with the plaintiff's contentions and affirm the trial court's judgment.
The plaintiff began working for Schumpert as a licensed practical nurse (LPN) in April, 1981. On the date of the accident, the plaintiff was performing her duties as an LPN in the orthopedic section of the hospital. The plaintiff alleges that she injured her back while she and three other members of the nursing staff lifted and turned an elderly bedridden patient. The plaintiff stated she was stretched over the bed and in a twisted position when she felt a pulling sensation in her back, which after a few hours, evolved into a more painful condition. The plaintiff explained that when this occurred, she notified the registered nurse in charge of the floor of her condition and went to the emergency room where she was x-rayed. These x-rays did not show any irregularities and the plaintiff was given a muscle relaxant and instructed to return home.
The plaintiff remained at home for a few days and then attempted to return to work. She was still experiencing some pain, however, and on November 5, 1981 she was admitted to Schumpert as a patient by Dr. M. Ragan Green, an orthopedic surgeon. The doctor stated that he decided to admit the plaintiff for conservative treatment due to her complaints of severe pain in her lower back and right leg. He stated, however, that his physical examination of the plaintiff prior to her admission to the hospital did not indicate any objective evidence of a significant back or disc injury. He stated that she was not experiencing any palpable muscle spasms in the area of the pain and that the neurological exam which he performed also showed negative results.
The plaintiff remained in the hospital through November 19, 1981, and was treated with analgesics, muscle relaxants, and physical therapy. Dr. Green's diagnosis upon the plaintiff's discharge from the hospital was that she had sustained a lumbosacral strain. In a memo dated November 30, 1981, Dr. Green released the plaintiff to return to work as of December 7, 1981.
Mrs. Wall then returned to her job and undertook her full duties as an LPN. She stated that Dr. Green had not listed any restrictions with respect to her employment; however, she placed some restrictions on herself, such as avoiding any lifting activities. On December 14, 1981, plaintiff requested a transfer to the data control department of the hospital and when this request was denied, the plaintiff terminated her employment, submitting a letter of resignation dated December 25, 1981. Schumpert then agreed to transfer her to the data control department as a part-time audit relief clerk. The plaintiff withdrew her letter of resignation and began this job on January 12, 1982. This was basically a part-time desk job which the plaintiff performed for a period of two months. The supervisor in charge of this department testified that during this time, the plaintiff was unavailable eleven days for relief work. The supervisor noted that this degree of unavailability was not acceptable.
March 13, 1982 was the plaintiff's last day at this job. The plaintiff was then readmitted to Schumpert Hospital by Dr. Green complaining of recurrent lumbar pain and some right leg pain. She was placed in pelvic traction and underwent more physical therapy. Dr. Robert Schwendimann was consulted and stated that there was no evidence of definite neurological problems. He noted that the plaintiff related that her back pain had improved considerably since November and that the more recent complaint of a "burning type sensation" in her leg was episodic and could not be related to any particular problem. He suggested that the plaintiff wear a "TNS unit" which would produce an electrical stimulus to block the pain of which the plaintiff was complaining.
The plaintiff was discharged from the hospital on March 29, 1982 and once again Dr. Green's diagnosis was lumbosacral strain. He agreed that other than the plaintiff's subjective complaints of pain, he *1035 could not find anything wrong with her. Upon her discharge, he released her to work on April 3, 1982.
Mrs. Wall testified that she attempted to return to work at that time, however, Schumpert would not allow her to return to work until she was released from the doctor's care. Schumpert asserted that although plaintiff was fully released by Dr. Green to return to work, re-employment was not offered to the plaintiff at that time, as the hospital felt that due to previous problems and complaints concerning the plaintiff, that she was temperamentally unsuited for employment at a health care facility.
In May, 1982, the plaintiff sought treatment from Dr. Austin Gleason, another orthopedic surgeon. He testified that he first saw the plaintiff on May 7, 1982 and that she was complaining of back pain and a burning and stinging pain in her right thigh. He stated that although the plaintiff did have decreased sensation over the lateral femoral cutaneous nerve distribution of her right thigh, his physical exam of the plaintiff did not otherwise reveal any serious nerve root irritation. The x-rays which were taken at that time also did not show any serious abnormalities. It was the doctor's impression that she had chronic back sprain and neuralgia parestheticia on the right side. He recommended that she continue wearing the TNS unit and that she undertake a vigorous physical therapy program.
Dr. Gleason saw the plaintiff several times in the following months and testified that she could have returned to work as an auditor anytime during this period. He stated that he spoke with someone at Schumpert about the possibility of re-employment for the plaintiff, however, he was told that there were no positions available.
In November, 1982, Dr. Gleason decided that due to the plaintiff's continuing complaints of pain in the lumbosacral region radiating into her hip and leg, that she should be admitted to Willis-Knighton Medical Center to explore the possibility of nerve root problems. The plaintiff was hospitalized until November 4, 1982, during which time a myelogram and EMG were performed. Dr. Gleason testified that these tests revealed that plaintiff had a degenerative disc at the L-4, L-5 level and that her movements would be somewhat restricted.
Dr. Donald Smith, a neurosurgeon was consulted and stated that he found no objective evidence of any abnormality and that he found the myelogram to be within normal limits. He stated that the patient's studies revealed an EMG which showed some irritability of an L-5 nerve root, however, the other tests showed normal results. It was his feeling that the patient could be released to return to full and unrestricted work and leisure activities.
Dr. Nabil A. Moufarrej, a specialist in neurology and neuromuscular diseases, testified concerning the electro-neurological testing that he performed on the plaintiff during this hospitalization. He stated that these tests revealed some evidence of increased irritation at the L-5 nerve root with some denervation of the hamstring suggestive of radiculopathy involving that root. However, he also stated that his findings were consistent with those of Dr. Smith. Dr. Moufarrej also stated that in July of 1983, these tests were repeated. Dr. Moufarrej testified that although there was some irritation, as compared to the previous study in November, 1982, there was evidence of improvement and clearing of the denervation previously noted in the L-5 myotome.
The plaintiff filed a petition in worker's compensation on October 12, 1982 against Schumpert alleging that she was totally and permanently disabled or, alternatively, that she was permanently partially disabled from performing her previous duties as a result of this accident on November 1, 1981. The trial court found that Mrs. Wall did sustain a lumbosacral strain while moving a patient on November 1, 1981, but that the totality of the evidence demonstrated that her injury was not serious. The court noted that "she received compensation for the five weeks from the date of injury to *1036 the date when Dr. Green released her to return to work. This is all the compensation to which Mrs. Wall is entitled."[1]
We agree with the trial court's conclusions in this regard. As noted by the Third Circuit Court of Appeal in Thompson v. Alamo Glass Company, 446 So.2d 990 (La. App. 3rd Cir.1984):
To recover benefits under the Louisiana Workmen's Compensation Law the employee must establish that he received a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031. It is well settled that although procedural rules are liberally construed in favor of workmen's compensation claimants, the claimant nonetheless bears the burden of proving by a preponderance of the evidence that his disability is causally related to an accident that occurred during the course and scope of his employment. Stuckey v. Home Ins. Co., 433 So.2d 776 (La.App. 3d Cir.1983), writ denied 435 So.2d 450 (La. 1983); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). The testimony of a claimant alone may be sufficient to prove the occurrence of a work-related accident, if such testimony is plausible, consistent, and is supported by other circumstances appearing from the record. However, where the plaintiff's testimony is the sole evidence, it must be clear and convincing. Crochet v. American Tobacco Co., 407 So.2d 1330 (La.App. 3d Cir.1981), Soileau v. Bituminous Cas. Corp., 348 So.2d 1313 (La.App. 3d Cir. 1977).
In the instant case, the trial court was correct in concluding that Mrs. Wall was injured as a result of a work-related accident. The record supports the plaintiff's testimony that after moving and lifting the elderly bedridden patient, her back began to hurt. She then sought medical attention in the emergency room at Schumpert.
Although each of the other nurses who assisted the plaintiff in lifting the patient testified that the incident was uneventful and that the plaintiff did not indicate to them that she was injured as a result of this, two of the nurses also testified that they learned that the plaintiff went to the emergency room later in the evening claiming that she had injured her back.
We find that the plaintiff carried her burden of proving that a work-related accident occurred. Such a finding of fact rendered in the trial court in a worker's compensation case is entitled to great weight and is not to be reversed unless manifestly in error. Carter v. P.K. Smith Chevrolet-Olds, Inc., 438 So.2d 655 (La.App. 2d Cir. 1983), writ denied 443 So.2d 595 (La.1983).
Although the plaintiff has proved the occurrence of a work-related accident, she has failed to prove that she was disabled by the accident for a period of time greater than that for which she was compensated by her employer.
In Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App. 2d Cir.1984) this court noted that:
A worker who cannot return to any gainful employment without substantial pain is totally disabled, either permanently or temporarily. LSA-R.S. 23:1221(1), (2); ....
However, although a claimant cannot perform his former or similar jobs because of substantial pain or disability, he is only partially disabled if he can perform gainful employment in another position. Thus, a worker is properly classed as partially disabled where, although *1037 he would experience substantial pain in performing his former job, he could work in other types of jobs without experiencing such pain. In short, partial disability exists where the plaintiff cannot perform the same work as before his injury because of substantial pain, but is mentally and physically capable of performing other available jobs. LSA-R.S. 23:1221(3); .... A claimant is therefore no longer totally disabled where he resumes work without substantial pain....
Although a claimant is deemed disabled when he cannot work without substantial pain, a claimant is not disabled within the intendment of the Worker's Compensation Act when he merely suffers some residual pain or discomfort when attempting to work. Pain is only disabling where it is substantial.... A claimant in compensation proceedings, like claimants in other civil proceedings, must prove his entitlement to a civil judgment by a preponderance of the evidence.... Thus, substantial pain must be proved by a preponderance and to a reasonable certainty.... [Citations omitted.]
The Louisiana Supreme Court in Lattin v. HICA Corp., 395 So.2d 690 (La.1981) explains the circumstances in which the "odd lot" doctrine may also be applicable.
Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.
The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., [389 So.2d 367 (La. 1980) ].
In the instant case, the trial court found that the plaintiff did not carry her burden of proving substantial pain to show that she was disabled under any of the aforementioned classifications. The court noted the lack of significant objective medical findings to support the plaintiff's claims of disabling pain. The plaintiff's initial treating physician, Dr. Green, diagnosed a lumbosacral strain on the basis of the plaintiff's subjective complaints as he did not find any objective evidence of a back abnormality. The plaintiff's second treating physician, Dr. Gleason, stated that the plaintiff had a degenerative disc and that her chronic back pain was a result of this condition. The trial court noted that this pain obviously fell short of being characterized as disabling, however, because even Dr. Gleason was willing to allow her to return to her work as an auditor or as a nurse with some limitations.
*1038 The record shows that the trial court accepted Dr. Donald Smith's opinion that plaintiff was not suffering any disability and that she could be released to full work and leisure activities without any restrictions. Dr. Moufarrej testified that his findings were consistent with those of Dr. Smith.
We find that the evidence supports the court's conclusions that Mrs. Wall was not disabled under the worker's compensation act. As noted in Culp v. Belden Corp., 432 So.2d 847 (La.1983):
On appellate review, the trial court's factual findings concerning work-related disability should be given great weight and should not be disturbed where the evidence before the trier of fact supports a reasonable factual basis for the trial court's findings, unless clearly wrong. Crump v. Hartford Accident & Indemnity Company, 367 So.2d 300 (La.1979).
As in Culp, supra, the plaintiff in the instant case did not establish a prima facie case for classifications as an odd lot worker either. There was no evidence that she was working in substantial pain or that she was likely to work in substantial pain upon her return to work as a licensed practical nurse. Therefore, she would not be placed at a substantial disadvantage in the competitive labor market. We agree with the trial court's conclusions that Mrs. Wall was adequately compensated by her employer for the periods of time she was absent from work until she was released to return to work by Dr. Green on December 7, 1981 and April 3, 1982.
The trial court in the instant case was also correct in denying the plaintiff's claim to recover penalties and attorney's fees for the defendant's alleged arbitrary and capricious refusal to pay compensation after March, 1982. LSA-R.S. 22:658 provides for the imposition of penalties and attorney's fees when the failure to pay worker's compensation benefits is found to be arbitrary, capricious or without probable cause. The penalty provision is stricti juris and should be imposed only in those instances in which the facts negate probable cause for non-payment. Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974). When an insurer's termination of compensation is based upon competent medical evidence, the action is not arbitrary and capricious. Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3rd Cir.1974); Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977).
Based upon the medical evidence and the conclusion of the trial court, with which we agree, the plaintiff was not disabled and was properly compensated under the worker's compensation act. Therefore, it is clear that penalties and attorney's fees are not warranted.
Accordingly, for the foregoing reasons the judgment of the trial court rejecting the plaintiff's claims for additional worker's compensation benefits, as well as penalties and attorney's fees, is affirmed.
AFFIRMED.
NOTES
[1] The trial court's opinion states further that Schumpert paid the plaintiff compensation of $148.53 for five weeks, as well as paying part of her medical bills. The plaintiff testified to this fact as well. However, it is also noted that in answers to interrogatories propounded by the defendant, the plaintiff stated that she received compensation totalling $148.53 per week in December, 1981 for an absence of four weeks from work and in April, 1982 for an absence of three weeks from work. In addition, in the plaintiff's petition, she alleges that the defendant terminated compensation benefits at the end of March, 1982. Therefore, it appears that the plaintiff received worker's compensation benefits until she was released to work again by Dr. Green on April 3, 1982.