748 So.2d 1270 (1999)
Steve KELLEY, Plaintiff-Appellee,
v.
JACK JACKSON CONSTRUCTION COMPANY and Louisiana Workers' Compensation Corporation, Defendants-Appellants.
No. 32,663-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 30, 1999.
*1272 Egan, Johnson & Stiltner by Thomas D. Travis, Baton Rouge, Counsel for Appellants.
Street & Street by D. Randolph Street, Monroe, Counsel for Appellee.
Before CARAWAY, PEATROSS & DREW, JJ.
PEATROSS, J.
This appeal arises from the judgment of the Workers' Compensation Judge ("WCJ") awarding increased supplemental earnings benefits ("SEBs"), penalties and attorney fees to Claimant/Appellee, Steve Kelley ("Claimant"). Jack Jackson Construction and the Louisiana Workers' Compensation Corporation ("LWCC" or collectively referred to herein as "Appellants") appeal asserting only one assignment of error, that the WCJ was clearly wrong in finding that Appellants were unreasonable in controverting Claimant's demand and thereby awarding penalties and attorney fees to Claimant. Appellants did not raise on appeal Claimant's entitlement to the increased SEBs. Claimant answered the appeal requesting additional attorney fees associated with the appeal. For the reasons stated herein, we affirm and award Claimant additional attorney fees in the amount of $1,500 for work associated with the appeal.

FACTS
On March 9, 1994, while working for Jack Jackson Construction as a carpentry apprentice in Monroe, Claimant inadvertently shot himself in the knee with a nail gun.[1] Claimant's knee was severely injured and he underwent two surgeries to repair the damage. As a result of the injury, Claimant suffered a
20 percent permanent impairment of his lower extremities and could not return to work as a carpentry apprentice. In late September 1994, Claimant was released to work with restrictions in lifting, climbing, squatting, bending, walking and standing.
After being released, Claimant was assigned, by the LWCC, the services of a vocational counselor, Jeannie Freeman. Ms. Freeman assisted Claimant for approximately three months from October 1994 through February 1995. At the time she rendered services to Claimant, Ms. Freeman was not a licensed vocational counselor, but was working under the supervision of a licensed vocational counselor. She did not become licensed until July 1995.[2]
Ms. Freeman's initial contact with Claimant was on October 21, 1994, when she and Claimant met at a McDonald's restaurant in Monroe. This was the only face-to-face contact between the two. Ms. Freeman testified that she found Claimant to be very motivated and eager to re-enter the workforce. Following this meeting, *1273 Ms. Freeman notified Claimant by mail of several potential jobs. The record indicates that Ms. Freeman, on behalf of the insurer, identified the following potential jobs for Claimant:
1. Sales job at Campo Electronics: Claimant was notified on December 6, 1994. Claimant applied, but was not hired due to lack of sales experience. Ms. Freeman testified that she did not know such experience was required. Notice to Claimant stated "sales experience helpful." The WCJ found this job "unsuitable" due to sales experience requirement.
2. Coca-Cola job: Claimant applied, but was not hired due to lack of sales experience. The WCJ found this job to be "unavailable" due to sales experience requirement.
3. Ryan Chevrolet service underwriter job: Claimant applied, but was not hired due to lack of required experience.
4. Agnew Sign job: Claimant applied, but was not hired due to lack of experience with sheet metal.
5. Riverside Kawasaki sales job: Claimant applied, but was not hired due to lack of computer experience.
6. Airborne Express parcel delivery job: Claimant did not apply because the notice did not indicate that the job was in Monroe, but led him to believe that it was in Shreveport.
7. Fiber Products assembly line job: Available through Manpower services; Claimant made application directly with employer, but was not hired.
8. Fast-Way Rent to Own rental contract writing, customer service oriented job: Claimant applied, but was not hired due to lack of experience.
As stated above, Claimant's attempts to procure employment with the suggested employers were unproductive. Ms. Freeman testified that she attempted, unsuccessfully, to contact Claimant by telephone to follow-up with him on February 27, 1995, and again on February 28, 1995. Shortly thereafter, Ms. Freeman had a telephone conversation with Gale Clausen of the LWCC, wherein she informed Ms. Clausen that she had identified several jobs for Claimant; but, to her knowledge, he was not yet employed. Based on that information, on March 9, 1995, the LWCC reduced Claimant's SEBs from $213.33 per week to $93.33 per week.[3] At the time of the reduction, as Ms. Freeman suspected, Claimant was still searching for employment. Ms. Freeman did testify that she followed-up with several of the identified employers; however, such follow-ups were not until 1998, after the filing of the present claim.[4]
By his own efforts, Claimant obtained employment at the Dollar General Store in January 1996 and also did some remodeling work on the side. By the time of trial, Claimant had, again by his own efforts, obtained employment as an apartment maintenance person earning $10 per hour, a higher wage than he had been earning at the time of his injury.
In June 1998, Claimant filed this action seeking back due SEBs based on zero earnings from the date of the reduction of his benefits in March 1995 until his employment with Dollar General began, and thereafter in accordance with his earnings, along with penalties and attorney fees. In January 1999, after a bench trial, the WCJ awarded Claimant back due SEBs from *1274 the date of the initial reduction, March 9, 1995, less any payments made in accordance with Claimant's actual earnings. Additionally, finding that the reduction of benefits was arbitrary and capricious conduct on the part of the LWCC, the WCJ awarded Claimant attorney fees in the amount of $5,000 and penalties in the amount of $2,000.

DISCUSSION

Standard of Review
As previously stated, the sole issue before this court is whether penalties and attorney fees should have been awarded. We review the WCJ's award of attorney fees and penalties under the manifest error standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Oliveaux v. Riverside Nursing Home, 29,419 (La. App.2d Cir.4/2/97), 691 So.2d 340. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks, supra; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Factual findings are not manifestly erroneous or clearly wrong when the record contains a reasonable factual basis for those findings. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, supra; Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).

Applicable Law
Under La. R.S. 23:1201.2, a claimant is entitled to recover reasonable attorney fees if the employer or its insurer discontinues payment of compensation, when the discontinuance is found to be arbitrary, capricious or without probable cause. 1988 La. Acts. No 732, § 1[5]; Banks, supra; Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La. App. 2d Cir.1987). Under former subsection (E) of La. R.S. 23:1201, applicable at the time of Claimant's injury (March 9, 1994), a claimant is also entitled to recover additional penalties from the employer for any compensation that is payable without an order, but which the employer has failed to pay. The amount of recoverable penalties is equal to 12 percent of the unpaid compensation or fifty dollars ($50) per calendar day for each day that the compensation remained unpaid, whichever is greater, up to a maximum aggregate amount of two thousand dollars ($2,000). 1992 La. Acts. No. 1003 § 1. These penalties, however, are not available if the employer reasonably controverts the claimant's right to such compensation. Id.; Banks, supra. A claim is reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Rothell v. City of Shreveport, 626 So.2d 763 (La.App. 2d Cir.1993); Johnson v. Vinson Guard Service, Inc., 92-2187 (La. App. 1st Cir.3/11/94), 636 So.2d 914.
Penalties are stricti juris and should only be imposed if the facts clearly negate good faith and just cause in connection with the refusal to pay or, as in the case sub judice, reduction in benefits. Guillory v. Travelers Ins. Co., 294 So.2d 215 (La.1974); Nowlin v. Breck Construction Co., 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112; Cleveland v. Delhi Guest Home, 29,506 (La.App.2d Cir.5/7/97), 694 *1275 So.2d 607; Duncan v. State, 556 So.2d 881 (La.App. 2d Cir.1990). Nevertheless, the WCJ has great discretion to award or deny penalties and attorney fees; her decision will not be disturbed absent an abuse of that discretion. Nowlin, supra; Duncan, supra.

Attorney Fees and Penalties
Appellants argue that the WCJ was clearly wrong in assessing attorney fees and penalties and that they should not be penalized for advancing legally or factually close issues. They further assert that the evidence shows that the claim was "reasonably controverted" and that the WCJ's finding to the contrary was error.
Conversely, Claimant contends that this is a case of "sham rehabilitation." Claimant argues that the alleged assistance he was given by Ms. Freeman was, in effect, nothing more than a letter writing campaign to justify the eventual reduction in benefits. According to Claimant and the WCJ, the LWCC arbitrarily and capriciously relied upon information from Ms. Freeman, who was not licensed at the time, that Claimant had been provided with at least one suitable, available job, the Campo job. Further, with the knowledge that Claimant had not yet been employed and without any follow-up whatsoever, the LWCC reduced his benefits. In her oral reasons for judgment, the WCJ stated:
The next question the Court must determine is whether the defendants were arbitrary and capricious in reducing the benefits. In this case I find that they were, and the reason that I find that they were is because Ms. Clausen is the person that hired Ms. Freeman to do the work. Ms. Freeman testified that she spoke with Ms. Clausen. Ms. Clausen made a decision to reduce [Claimant's] benefits based on the fact that there was a job that Ms. Freeman had told him about. It is her responsibility to inquire to Ms. Freeman what other efforts were made; what the job required. In this situation, if anybody had made the single effort of contacting [Claimant] to find out what happened as a result of his application at Campo, they would have discovered as the Court has discovered today, that he wasn't hired because he didn't have sales experience. And because they failed to take [sic] that extra effort-probably would have been one phone call. Because they failed to take [sic] that extra effort, they felt like they were justified in reducing his benefits based on the availability of the job at Campo, which was not available to him because of his lack of experience.
We find that the record reveals a sufficient factual basis for the WCJ's findings. Other than notifying Claimant by mail of several potential jobs, Ms. Freeman did nothing to assist him in re-entering the workforce. Moreover, the jobs she did identify were outside of his qualifications, requiring one type of experience or another, which Claimant did not possess. Had she followed-up with him, as noted by the WCJ, she would have been aware of this. Faced with two permissible views of the evidence, the WCJ made a finding that reliance on Ms. Freeman's information and the services which she provided was arbitrary and capricious. On this record, we cannot say that the WCJ abused her discretion in so finding.[6]
Regarding the award of penalties, we likewise find that the WCJ's conclusion *1276 that Appellants did not reasonably controvert Claimant's demand for compensation payments was not clearly wrong. Specifically, Appellants challenge the WCJ's interpretation and application of the job availability requirement which forms part of the burden of the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. See Banks, supra. The WCJ found that none of the identified jobs were "available" to Claimant due to the various experience requirements. Particularly, she found that the Campo job, on which the LWCC relied in its reduction of Claimant's benefits, was not "available" to Claimant because of the sales experience requirement. While we are cognizant that a job need not be "particularly suited" to a claimant and that actual job placement is not required to discharge the employer's burden, we cannot say that the WCJ was clearly wrong in determining that the jobs identified by Ms. Freeman were not "available" to Claimant. Likewise, we do not find the WCJ's conclusion that, because Ms. Freeman was aware of the experience requirements and did nothing to follow-up with Claimant regarding his job search, the LWCC did not have sufficient knowledge to reasonably controvert Claimant's demand for compensation benefits to be manifestly erroneous.

Claimant's Answer: Additional Attorney Fees
Claimant has answered this appeal seeking an increase in attorney fees for post-trial work and legal effort on appeal. Such increase is appropriate where, as here, the appeal has necessitated additional work on the part of a claimant's counsel, provided that the claimant has requested the increase in accordance with proper appellate procedure. Miller v. City of New Orleans, 95-1005 (La.App. 4th Cir.12/14/99), 665 So.2d 1293. We find, therefore, that Claimant is entitled to an increase in attorney fees for work associated with this appeal and that the amount requested, $1,500, is reasonable.

CONCLUSION
For the reasons stated herein, the judgment of the Workers' Compensation Judge is affirmed. Further, Claimant is awarded additional attorney fees in the amount of $1,500 for work associated with this appeal. All costs of the appeal are assessed to Appellants, Jack Jackson Construction, Inc. and the Louisiana Workers' Compensation Corporation.
AFFIRMED.
NOTES
[1] The parties stipulated that Claimant was injured in the course and scope of his employment. An additional stipulation was entered as to Claimant's pre-injury average weekly wages, which were $320, and his full weekly workers' compensation benefit, which was $213.32.
[2] Claimant places a great deal of emphasis on Ms. Freeman's unlicensed status during the time in which she provided him vocational counseling. We do not, however, believe that the lack of a license in and of itself is determinative in this case. In order to attain the goal of providing quality vocational rehabilitative services to injured employees attempting to re-enter the work force, it is imperative that vocational counselors have adequate training. We believe that "provisional licensing," which allows a counselor awaiting full licensing status to work under the supervision of a licensed counselor, is an important part of such training. That does not, however, relieve the employer or LWCC of the responsibility to ensure that the employee receives quality vocational rehabilitation, whether from a provisionally licensed or fully licensed counselor.
[3] The record reflects that the reduction was calculated using the lowest wage rate of the various jobs identified by Ms. Freeman, the Campo sales job, which started at $4.50 per hour.
[4] We note that, by the time Ms. Freeman contacted the employers, more than three years after Claimant's injury and subsequent job search, several of the employers did not have Claimant on file. One indicated that it did not have records as far back as 1994, one had changed its name and one had gone out of business.
[5] In 1995, La. R.S. 23:1201.2 was amended. The amendment, however, did not change the standard to be followed in awarding attorney fees for the discontinuance of compensation payments. In such cases, the arbitrary and capricious standard applies.
[6] Appellants rely on Banks, supra, asserting that, like Banks, this is a close factual case; and, therefore, penalties and attorney fees are inappropriate. We agree with Claimant, however, that Banks is factually distinguishable from the case sub judice. In Banks, the claimant was uncooperative with the efforts of the vocational rehabilitation counselor. We find it significant that, in this case, Claimant actively sought all but one of the identified jobs. Further, he sought and obtained employment on his own when he found that he was not qualified for any of the jobs identified by Ms. Freeman. Banks was not a situation where, as here, the claimant was motivated, cooperative and eager to find employment. In the present case, it is the failure on the part of the LWCC and the rehabilitation counselor which supports the award of attorney fees and penalties.