691 So.2d 340 (1997)
Vennie OLIVEAUX, Plaintiff-Appellee,
v.
RIVERSIDE NURSING HOME, Defendant-Appellant.
No. 29419-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
*341 Onebane, Bernard, Torian, Diaz, McNamara & Abell by Mark L. Riley, Lafayette, for Defendant-Appellant.
Albert W. Block, Jr., West Monroe, for Plaintiff-Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
PEATROSS, Judge.
In this worker's compensation action, the employer, Riverside Nursing Home ("Riverside"), appeals the judgment of the Workers' Compensation Hearing Officer ("WCHO"), contending that the claimant, Vennie Lee Oliveaux ("Claimant"), did not prove by an overwhelming preponderance of the evidence that she contracted an occupational disease within the first twelve months of her employment. The WCHO found that the Claimant had met her burden of proof and awarded weekly workers' compensation benefits from the date they were terminated, legal interest from its due date until paid, penalties in the amount of $2,000 and attorney fees in the amount of $5,000. For the following reasons, we affirm the award of weekly workers' compensation benefits and reverse the award of penalties and attorney fees.

FACTS
The Claimant began working in the dietary department of Riverside as a kitchen assistant on August 3, 1993. Her duties included serving on the food line, cleaning the dining room, washing pots and pans and operating the dish washing machine. Within two months of her employment, Claimant began having problems with her hands which became irritated between the fingers. She continued to have problems with her hands, and in March 1995, Riverside sent the Claimant to the Monroe Medical Clinic. Dr. Helena Altick diagnosed Claimant as having a secondarily infected pompholyx secondary to allergic reaction to latex gloves. Dr. Altick suggested that the Claimant be transferred from her dish washing position and that she wear vinyl gloves with cotton lining and avoid contact with water as much as possible.
On June 5, 1995, the Claimant went to Dr. Creighton Chandler, a dermatologist whom she had previously seen for contact dermatitis around her mouth in September and October 1992. Dr. Chandler noted blisters and weeping on the Claimant's hands and suggested that she not work for a month, June 6, 1995, until July 5, 1995. The Claimant visited Dr. Chandler again on June 9, 1995, and the doctor noticed fissuring and peeling, but did see improvement. On her June 15, 1995, visit the Claimant's hands were red but healing, and showed no signs of new blisters.
On June 26, 1995, Dr. Chandler performed a patch test on the Claimant and read the results of that test on June 29, 1995. The Claimant had reactions to a carba mix and a thiuram mix, both of which are ingredients used in making rubber. On July 20, 1995, Dr. Chandler diagnosed the Claimant as having contact dermatitis due to an unknown primary irritant and rubber allergy. The Claimant continued to see Dr. Chandler and was still under his care at the time of the trial.
The Claimant stated in her Disputed Claim for Compensation Form that her last day of work was June 1, 1995. Riverside paid Claimant's compensation for the first month she was placed off work by Dr. Chandler and has continued to pay all medical bills. After Riverside terminated Claimant's compensation payments, she filed a Disputed Claim for Compensation with the Office of Workers' Compensation on June 8, 1995, in which she alleged that she was forced to terminate her employment with defendant as a result of long-term exposure to cleaning fluids. Trial was held on April 4, 1996, and the WCHO signed a judgment on May 17, 1996, ordering the payment of weekly workers' compensation benefits in the amount of $179.39 from the date the benefit payments were terminated until Dr. Chandler released Claimant to return to work. The judgment also ordered Riverside to pay a $2,000 penalty and awarded attorney fees to Claimant's attorney in the amount of $5,000.
The parties filed a joint motion and order to amend the judgment because the WCHO *342 awarded weekly workers' compensation benefits in the amount of $179.39, the Claimant's average weekly wage, rather than 66 2/3 percent of the weekly wage, or $119.60. LSA-R.S. 23:1221. The WCHO amended the judgment to reflect the proper weekly workers' compensation award of $119.60[1].
Riverside appeals the judgment and order amending the judgment, arguing that the Claimant did not prove by an overwhelming preponderance of the evidence, as required by LSA-R.S. 23:1031.1(D), that she contracted an occupational disease within the first twelve months of her employment. Riverside also complains that the WCHO's order that interest be paid on each installment of weekly workers' compensation benefits from the date due until paid is contrary to LSA-R.S. 23:1201.3 which allows for interest from the date ordered paid by the WCHO until the date of satisfaction. In addition, Riverside argues that the imposition of penalties and attorney fees was improper because it was not unreasonable in denying the Claimant's benefits.

DISCUSSION
In its first assignment of error, Riverside argues that the Claimant did not overcome the presumption found in LSA-R.S. 23:1031.1(D) that her illness is a non-occupational disease. Riverside contends that the Claimant failed to prove by an overwhelming preponderance of the evidence that she contracted her disease during the first twelve months of her employment as required by the statute. LSA-R.S. 23:1031.1(D) provides:
Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
Riverside claims that Dr. Chandler's testimony is insufficient to overcome this presumption because he is unable to name the specific primary irritant found in the Claimant's work environment that caused her contact dermatitis. The employer characterizes Dr. Chandler's testimony as establishing only a temporal relationship between the Claimant's disease and her work environment because many of the irritants discussed by Dr. Chandler as possible causes of Claimant's condition would also be found in her home environment.
In Dibler v. Highland Clinic, 27,274 (La. App.2d Cir. 9/27/95), 661 So.2d 588, this court discussed the meaning of the phrase "overwhelming preponderance of evidence" as used in LSA-R.S. 23:1031.1(D). In that case the claimant alleged that she had contracted carpal tunnel syndrome, tardy ulnar palsy and thoracic outlet syndrome during her first twelve months as an oral surgeon's assistant. We affirmed the WCHO's award of workers' compensation benefits, finding that the claimant had met her burden of proof under the statute. In discussing the burden of proof, this court stated:
In accord with the ordinary sense of the word overwhelm, we conclude evidence which overwhelmingly preponderates is that evidence, if found credible and objectively supported by the trier of fact, which either is much more probable than, is greatly superior to, or greatly overcomes the evidence to the contrary. Other evidentiary principles, such as positive or affirmative evidence being superior to negative evidence, should also guide the analysis.
*343 In the present case, Claimant testified that she began having problems with her hands about two months after she began working in the dietary department of Riverside. She stated that before working at Riverside, she had worked for four years at Morrison's Cafeteria. As part of her job at Morrison's, she washed pie and bread pans and salad bowls. Claimant said that she had no problems with her hands during her employment at Morrison's. Claimant also testified that prior to working at Riverside she could use ordinary household cleaners with no problems; but, after working for Riverside, she could no longer use such cleaners and could not even use ordinary bath soap.
In describing her work activities at Riverside, the Claimant testified that she washed pots and pans using dish washing liquids and cleaned plates in a bleach solution. She also stated that she would operate the dish washing machine which used industrial strength chemicals. While the Claimant did not have to load the industrial cleaners into the machine, she said that she did have to reach into the hot, steamy machine to pull out the dishes and she did have to clean the machine.
In letters dated September 8, 1995, and October 27, 1995, Dr. Chandler stated that he believed the contact, irritant dermatitis was possibly caused by ammonia products or disinfectant solutions and that there was no test to determine the primary irritant. He also recommended that the Claimant be removed from her occupation which required the use of chemicals, water and constant cleaning. In addition, Dr. Chandler stated that, "Basically Mrs. Oliveaux has blistering, edematous and peeling hands caused, I believe, by the chemicals used in her job at the nursing home."
In his testimony which was presented to the WCHO by deposition, Dr. Chandler, who was accepted as an expert in the field of dermatology, testified that he could not specifically name the primary irritant that caused Claimant's condition. He also stated that many of the things found in her work environment would be found in her home environment. When asked if he could state whether the contact dermatitis was caused by something in her work environment rather than something in her home, Dr. Chandler responded that in taking into consideration the Claimant's work history, tasks involved in her job at Riverside and the chemicals she would come in contact with at Riverside, "... I don't think it's very goodyou know, if I had to say yes, I'd say most likelymore likely than not."
The Claimant, at Riverside's request, also went to see Dr. James Bergeron who provided Riverside's counsel with a dermatological case summary. In this summary, Dr. Bergeron stated that after consulting with the Claimant and reviewing Dr. Chandler's clinical notes, he concurred with Dr. Chandler's diagnosis and recommendations. Dr. Bergeron wrote:
It is my clinical opinion that if the patient should continue to work in an environment containing known chemical irritants, such as detergents, solvents, cleaning materials, etc., the patient will probably continue to have problems with her skin, especially of her hands.
It is my recommendation that patient avoid, as much as feasible, coming into contact with chemicals, irritants, detergents, solvents, and cleaning materials in the work environment.
The WCHO found that the Claimant was very credible, that the medical evidence was overwhelmingly in support of Claimant's contentions, that Claimant suffered no outbreaks until her employment at Riverside and that the only difference between her prior employment and her employment with Riverside was the presence of toxic chemicals at Riverside. Based on these findings the WCHO concluded that the Claimant had shown by an overwhelming preponderance of the evidence that her contact dermatitis was an occupational disease contracted within the first twelve months of her employment at Riverside. In light of Dibler v. Highland Clinic, supra, we conclude that the WCHO was not clearly wrong.
Riverside also complains that, contrary to LSA-R.S. 23:1201.3, the WCHO ordered interest to be paid on each installment of the weekly workers' compensation benefits from *344 its due date until paid. LSA-R.S. 23:1201.3(A) provides in pertinent part:
Any compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear judicial interest from the date ordered paid by the hearing officer until the date of satisfaction.
This statute replaces the jurisprudential rule that pre-judgment interest on workers' compensation benefits is awarded from the dates the payments are due until they are paid. Hammons v. ABB C-E Services, Inc., 94-2444 (La.App. 1st Cir. 10/6/95), 671 So.2d 370; Verret v. Cajun Travel, Inc., 94-1432 (La.App. 3d Cir. 4/5/95), 653 So.2d 777; Brazley v. Burger King/CIGNA, 613 So.2d 739 (La.App. 4th Cir.), writ denied, 615 So.2d 339 (La.1993).
In the present case, the WCHO's judgment states, "Claimant is entitled to legal interest on each installment of weekly workers' compensation benefits from its due date until paid." To clarify the judgment of the WCHO regarding the issue of legal interest, we amend the judgment in accordance with LSA-R.S. 23:1201.3(A). Concerning "compensation awarded," such as weekly workers' compensation benefits due as of the date of the WCHO's judgment, interest runs from the date of the WCHO's judgment, May 17, 1996, until the date of satisfaction. Regarding the payments of compensation "directed to be made by order of the hearing officer," which in this case consists of weekly workers' compensation benefits coming due after May 17,1996, interest on these benefits runs from the respective dates the benefits are due ("the date ordered paid by the hearing officer") until the benefits are paid.
In its final assignment of error, Riverside argues that it was not unreasonable in terminating the Claimant's workers' compensation benefits after the first month she was off work; and, thus, the award of penalties and attorney fees was improper. Riverside contends that Dr. Chandler, after numerous requests, failed to give an explanation of how the Claimant's condition was related to her employment. Riverside points out that Dr. Chandler's original explanations were vague and that he has never been able to name the exact irritant that caused Claimant's condition.
The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact and the trial court's finding shall not be disturbed on appeal absent manifest error. Bradley v. Justiss Oil Co., Inc., 618 So.2d 646 (La.App.2d Cir.1993); McKenzie v. City of Bossier, 585 So.2d 1229 (La.App.2d Cir. 1991). Whether reduction or termination of workers' compensation benefits is without probable cause so as to render the employer liable for attorney fees and penalties depends primarily on facts known by the employer at the time of its action. When a reduction or termination is based on legitimate disputes as to extent or cause of claimant's disability, penalties and attorney fees will not be awarded. Bradley v. Justiss, supra; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991).
In the present case, the WCHO found that Riverside was not reasonable in terminating the Claimant's benefits because it had medical reports from both Drs. Chandler and Bergeron clearly stating Claimant's condition and its relation to her work. We conclude that this finding is clearly wrong. From the very beginning, Claimant's assertions centered around her allergic reaction to latex gloves. When Riverside sent the Claimant to the Monroe Medical Clinic, Dr. Altick diagnosed her as having "secondarily infected pompholyx secondary to allergic reaction to latex gloves." In describing how the accident or injury occurred in the Employer's Report of Occupational Injury or Disease Form, Riverside stated that Claimant had a "skin reaction/allergy to continued use of latex gloves." In addition, Dr. Chandler testified in his deposition that he had previously treated the Claimant in 1992 for allergic contact dermatitis around her mouth, which was caused by the latex exam gloves used by her dentist.
As for the information provided by Dr. Chandler, the initial contact he had with Riverside was a simple slip dated June 6, 1995, which released Claimant from work until July 5, 1995, without any explanation.
*345 After request from both Claimant's and Riverside's attorneys, Dr. Chandler wrote a brief letter dated September 8, 1995, in which he mentions not only chemicals, but also the allergy to latex gloves used by the Claimant. Although Dr. Chandler wrote a more detailed letter dated October 27, 1995, in which he gave a complete review of his treatment of the Claimant, Dr. Chandler again mentions the Claimant's allergy to latex gloves.
The facts known by Riverside at the time of its termination of benefits justify its ceasing these payments. Most of the emphasis seemed to be placed on the Claimant's use of latex gloves. A letter from Claimant's attorney to Dr. Chandler dated August 9, 1995, states, "Ms. Oliveaux stopped working on or about June 1, 1995 as a result of allergic reaction to some type of irritant or allergent. It had been previously thought that she was allergic to latex gloves which it does appear so." Even the WCHO states in the Written Reasons For Judgment that "Claimant shows she now suffers from contact dermatitis. She contends the contact dermatitis occurred as a result of an allergic reaction to latex gloves." The Claimant, however, testified that she did not use latex gloves in her employment with Riverside. Since the Claimant did not even wear latex gloves while working at Riverside, and the gloves were initially thought to be the cause of her condition, Riverside was justified in questioning whether Claimant's condition was related to her employment. We reverse the award of penalties and attorney fees.

CONCLUSION
For the foregoing reasons, the award of weekly workers' compensation benefits is affirmed and the award of penalties and attorney fees is reversed. In addition, the judgment of the WCHO is amended to award Claimant legal interest on her weekly workers' compensation benefits which had accrued as of the date ordered paid by the WCHO to run from that date, May 17, 1996, until the date of satisfaction, and legal interest on her weekly workers' compensation benefits due after the WCHO's judgment from the date each respective payment is due until the date of satisfaction. The costs of this appeal are assessed to the appellant.
AFFIRMED IN PART, REVERSED IN PART AND, AS AMENDED, AFFIRMED.
NOTES
[1] While the WCHO characterized the order amending the judgment as correcting both an error in calculation and a typographical error and, thus, permitted by La.C.C.P. art. 1951, we note that even if the order is characterized as being a substantive change, the amendment is still proper because both parties consented. See Rodgers v. Rodgers, 26,093 (La.App.2d Cir. 9/21/94), 643 So.2d 764; LaBove v. Theriot, 597 So.2d 1007 (La.1992); Villaume v. Villaume, 363 So.2d 448 (La.1978).