767 So.2d 143 (2000)
HIBERNIA NATIONAL BANK, Plaintiff-Appellee,
v.
Alfred J. ANTONINI, Alva Jane Marquez Antonini and Judah Hertz, Defendants-Appellants.
No. 33,436-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
Rehearing Denied September 21, 2000.
*144 Mayer, Smith & Roberts by David F. Butterfield, Shreveport, Counsel for Defendants-Appellants, Alfred J. Antonini and Alva Jane Marquez Antonini.
Hudson, Potts & Bernstein by James A. Rountree, Monroe, Counsel for Original Defendant-Judah Hertz.
Guerriero & Guerriero by Joe D. Guerriero, Monroe, Counsel for Plaintiff-Appellee, Northeast Realty, L.L.C.
Before BROWN, DREW and CRIGLER (Pro Tempore), JJ.
DREW, J.
In this foreclosure action, Alfred J. Antonini and Alva Jane Marquez Antonini appeal a judgment denying leave to amend their answers, granting Hibernia's motion to strike and granting Hibernia's motion for summary judgment.
We reverse and remand.

FACTS
On May 23, 1991, Alfred J. Antonini and Alva Jane Marquez Antonini executed a promissory note payable to Hibernia National Bank in the original principal amount of $650,000, together with annual interest of 11%. The note required 59 regular monthly payments of $7,450, the first payment of which was due on June 23, 1991, and one final balloon payment of $545,594.66. The note matured on May 23, 1996, and became fully due and payable.
The promissory note was secured by a collateral mortgage note in the principal amount of $975,000 together with 12% annual interest executed and pledged to Hibernia on May 23, 1991. The note was secured by a collateral mortgage on the Cypress Manor Apartments ("complex"). The collateral mortgage also acted as a collateral assignment of all rents and leases at the complex. The Antoninis also executed a UCC-1 financing statement and a commercial security agreement granting to Hibernia a security interest in all inventory, equipment and fixtures at the complex.
On May 22, 1991, Judah Hertz executed a commercial guaranty in which he guaranteed the payment and satisfaction of all of the Antoninis' present and future indebtedness in favor of Hibernia.
On April 21, 1997, Hibernia filed a petition for judgment on the indebtedness under the promissory note and to have its mortgage recognized and rendered executory. The unpaid balance due on the promissory note was $544,958.38, with interest accruing at 11% per year from May 23, 1996.
Alva Antonini, a resident of California, was served pursuant to the Louisiana Long Arm Statute on April 26, 1997. Alfred Antonini, a resident of Texas, was served pursuant to the Long Arm Statute on April 28, 1997. A California private process server attested in an affidavit that he made domiciliary service on Hertz on July 1, 1997.
Alfred Antonini filed a pro se answer on May 30, 1997. No affirmative defenses were raised in this answer. Alva Antonini filed a pro se answer on June 16, 1997. Her answer, which likewise raised no affirmative defenses, essentially tracked the language used in Alfred's answer. Hertz's attorney filed an answer and the declinatory exception of insufficiency of service of process on August 20, 1997.

Motion for Summary Judgment
Hibernia filed a motion for summary judgment on November 19, 1998. Hertz's exception was still pending and had not *145 been set for hearing at the time. Submitted in support of the motion was an affidavit from Stephen Bakken, a Hibernia Vice-President. The motion was set for hearing on January 4, 1999.
On the date set for the hearing, and after the Antoninis had retained counsel, the parties filed a joint motion to continue the hearing, which was reset for February 1, 1999. According to appellants' brief, they retained counsel on December 31, 1998.
On January 29, 1999, counsel for the Antoninis faxed their opposition to summary judgment, including an affidavit from Alfred Antonini, to the trial court and opposing counsel. These documents were filed into the record on February 2, 1999. The Antoninis contended that genuine issues of material fact existed regarding the amount of the principal balance of the loan, Hibernia's breach of its agreement to restructure the loan, and misrepresentations and omissions of information made by Hibernia employees.
Alfred Antonini stated in his affidavit that:
(1) He and Alva Antonini purchased the Cypress Manor Apartments complex from Judah Hertz on March 1, 1990;
(2) Hibernia held the mortgage on the property and was assisting Hertz in his efforts to sell it;
(3) Agents and employees of Hibernia ("Hibernia") represented to them that the property was a good investment;
(4) Hibernia failed to disclose that the complex was in a high crime area, that previous owners failed in their efforts to renovate the complex and operate it at a profit, that the prior owners had experienced severe cash flow problems and that owners of a similar complex located across the street had also experienced financial difficulties;
(5) Relying on these representations, they purchased the complex subject to a note and security documents executed by Hertz;
(6) Shortly after purchasing the property, they encountered vandalism and lease delinquencies resulting in a negative cash flow of several hundred thousand dollars;
(7) When the loan to Hertz matured in 1991 and he (Alfred Antonini) indicated to Hibernia that he was concerned about continuing to own the property, Hibernia responded that it was concerned about losing the money it had invested in the property;
(8) Hibernia indicated that the loan would be restructured on favorable terms and conditions if the Antoninis would continue to own and operate the complex, and that the bank would work with him if he needed additional restructuring of the loan in the future;
(9) Based on Hibernia's representations, the Antoninis obtained a new loan in April 1991 while unaware that Hibernia possessed an appraisal showing the value of the property to be less than the loan amount;
(10) During meetings in 1995 and 1996, agents and employees of Hibernia admitted that they had not disclosed the crime problems, the failed efforts of previous owners to renovate, cash flow problems experienced by prior owners, the similar problems experienced by the owners of a similar complex across the street and the existence of the appraisal;
(11) During these meetings, Hibernia agreed to discount the note and restructure the loan if the property could not operate at a profit in the future, and in reliance on these representations, the Antoninis continued to own and operate the complex;
(12) Hibernia refused to discount and restructure the loan when requested to do so in April 1997; and
(13) Hibernia filed an insurance claim after a fire at the complex, but Hibernia failed to apply these proceeds to the balance of the loan.
*146 Counsel for the Antoninis failed to appear at the February 1, 1999 hearing. Hibernia filed a motion to strike on that date, contending that the Antoninis' opposition consisted of affirmative defenses that had not been raised in their answers. Hibernia also informed the court that the Antoninis' opposition to the motion to strike, if any, would be filed within two days. The trial court agreed to render its ruling on the pending motions in court on February 5. An amended answer setting forth affirmative defenses was submitted by the Antoninis on February 2 and filed into the record on February 5.
By judgment rendered on February 5, 1999, the trial court denied leave to amend the answers, granted the motion to strike and granted the motion for summary judgment. Hibernia was awarded $544,958.38 with 11% annual interest from May 23, 1996, attorney fees and costs, but subject to a credit on January 11, 1999 of $87,125.16. The collateral mortgage was recognized and rendered executory.
During the hearing on the motion for summary judgment, the trial judge stated that he did not believe that the Antoninis' filings were in good faith. At a later hearing on the Antoninis' motion for new trial, which was subsequently denied, the trial judge additionally stated that due to the uncorroborated self-serving statements in Mr. Antonini's affidavit, he believed that the attempt to amend the answers was for purposes of delay.
Northeast Realty, L.L.C. was substituted as plaintiff after the judgment was assigned to it. To avoid confusion in this opinion, we will continue to refer to Hibernia as the appellee.

DISCUSSION

Motion to Strike/Leave to Amend Answer
In their first assignment of error, the Antoninis argue that the trial court erred in granting the motion to strike their opposition to summary judgment. What is truly at issue in this particular assignment is whether the trial court properly denied leave to amend their answers to allege the affirmative defenses that are set forth in the opposition.
The answer shall set forth any matter constituting an affirmative defense. La. C.C.P. art. 1005. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiffs demand on the merits. Cooper v. Borden, Inc., 30,292 (La.App.2d Cir.2/25/98), 709 So.2d 878.
The original pro se answers individually filed by Alfred Antonini and Alva Antonini did not set forth any affirmative defenses, which ultimately resulted in their attempt to amend their answers to conform to their opposition. A defendant may amend his answer once without leave of court at any time within ten days after it has been served; otherwise, the answer may be amended only by leave of court or by written consent of the adverse party. La. C.C.P. art. 1151.
Pleadings must be construed reasonably so as to afford litigants their day in court and to do substantial justice. Long v. Long, 28,763 (La.App.2d Cir.12/11/96), 684 So.2d 1099, writ denied, 97-0096 (La.3/7/97), 690 So.2d 20. The Louisiana Code of Civil Procedure articles are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves. La. C.C.P. art. 5051.
The law takes a liberal approach toward allowing amended pleadings in order to promote the interests of justice. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291. Amendment of pleadings should be liberally allowed, provided the movant is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced and trial of the issues will not be unduly *147 delayed. Premier Bank, Nat. Ass'n v. Robinson, 618 So.2d 1037 (La.App. 1st Cir. 1993).
The decision as to whether to grant a defendant leave to amend an answer is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice. Hogan v. State Farm Auto Ins. Co., 94-0004 (La.App. 1st Cir.12/22/94), 649 So.2d 45, writ denied, 95-0215 (La.3/17/95), 651 So.2d 276.
The trial court believed that the "eleventh hour" filings were not done in good faith and were designed for the purposes of delay, apparently to weaken Hibernia's position during negotiations over the sale of the note.
We are mindful of our supreme court's indulgent treatment of affirmative defenses first raised by affidavit in opposition to summary judgment as expressed in Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). Vermilion sued to enjoin defendants' use of its man-made navigable canals. Defendants claimed in their answers that the private canals were navigable waterways subject to a right of use by the public and were not susceptible of private ownership or control. Granting Vermilion's motion for summary judgment, the trial court rejected defendants' argument that because the artificial waterways destroyed the navigability of surrounding natural waterways, they had the right under state law to use Vermilion's canals as a substitute for the natural system. The court of appeal affirmed the granting of summary judgment and writs were denied by our supreme court. However, the United States Supreme Court, in remanding the matter to the Third Circuit, indicated that the defendants would have a right under federal law to use Vermilion's canals as a substitute for any natural, navigable waterway substantially impaired or destroyed by Vermilion's construction. This would constitute an affirmative defense. The Third Circuit, partly because the defense of diversion or destruction of public waterways had not been affirmatively pled in the answers, declined to remand the case to allow the defendants to prove that Vermilion's canals diverted or destroyed the navigability of nearby natural waterways.
Reversing the third circuit and remanding the case to the trial court, our supreme court stated:
The ultimate question of whether there is no genuine issue as to the material fact of impairment or destruction of a natural, navigable waterway by construction of the artificial system hinges in part on a subsidiary question: whether defendants' opposing affidavit must be disregarded because it was not made on personal knowledge or because it raises an affirmative defense not pleaded in defendants' answers.
* * * *
Defendants' failure to plead the destruction of a natural waterway in their answers does not preclude consideration of such a material fact appearing in their opposing affidavit. Although there is authority to the contrary, see cases cited at 6 Moore's Federal Practice § 56.11(3), n. 54, pp. 56-252, we think the better rule is that either the answer should be deemed amended to conform to proof offered by the affidavits or a formal amendment permitted, the affidavits considered, and the motion for summary judgment decided under the usual rule pertaining to the adjudication of summary judgment motions. Freeman v. Marine Midland Bank-New York, 494 F.2d 1334 (2d Cir.1974); Sherman v. Hallbauer, 455 F.2d 1236 (5th Cir.1972). Cf., Rossiter v. Vogel, 134 F.2d 908 (2d Cir.1943); Kane v. Chrysler Corp., 80 F.Supp. 360 (D.Del.1948); 6 Moore's Federal Practice § 56.10, 56.11(3) n. 39, 56.22(1) (2d ed.1980).

Vermilion Corp. v. Vaughn, 397 So.2d at 493.
*148 As noted earlier, the trial judge believed that the Antoninis attempted to amend their answers in bad faith and for purposes of the delay. At the February 5 hearing, counsel for Hibernia asserted to the court that Alfred Antonini's cousin, Orlando Antonini, approached him at the February 1 hearing about buying the note at issue and debated whether the insurance proceeds should be applied to the outstanding principal or interest. Attached to Hibernia's opposition to the motion for new trial is a copy of a lawsuit filed on June 8, 1999 by Misty Bayou (Orlando Antonini as agent) against Hibernia, in which Misty Bayou alleged Hibernia breached its agreement to sell the promissory note and mortgage at issue for $195,000. According to this petition, Misty Bayou owned property adjacent to the Cypress Manor complex.
The Antoninis obviously did not proceed with any sort of haste in hiring counsel or in raising these affirmative defenses, which they raised for the first time nearly 18 months after they filed their pro se answers. Still, while allowing the Antoninis to amend their answers would have prevented the granting of summary judgment for reasons to be explained later in this opinion, it would not have delayed trial as apparently no trial date had actually been set. In addition, Hibernia had itself waited nearly 17 months to file the motion for summary judgment after filing suit. Without the amendment to their answers, the Antoninis were unable to offer any evidence in opposition to summary judgment. In light of our supreme court's pronouncement in Vermilion, we conclude that the trial court abused its discretion in denying leave to amend the answers. Therefore, the trial court also erred in granting the motion to strike the documents submitted by the Antoninis in opposition to the motion for summary judgment.

Summary Judgment
The Antoninis argue in their next assignment of error that the trial court erred in granting summary judgment because their opposition established genuine issues of material fact and because Hibernia's affidavit failed to correctly set forth the amount due on the note. Hibernia contends that Alfred Antonini's affidavit is self-serving and without any corroboration.
We conduct a de novo review of the documents supporting and opposing a motion for summary judgment under the same criteria which governs a trial court's determination of whether summary judgment is appropriate. Jackson v. Beasley, 30,359 (La.App.2d Cir.4/8/98), 712 So.2d 162.
The summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. Art. 966(B). A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Curtis v. Curtis, 28,698 (La.App.2d Cir.9/25/96), 680 So.2d 1327.
Stephen Bakken, a Hibernia Vice-President, attested in his affidavit that the unpaid principal balance of the promissory note was $544,958.38, with 11% annual interest accruing from May 23, 1996. No mention is made of the insurance payment in his affidavit. According to a letter from Hibernia's counsel attached as an exhibit to the Antoninis' motion for oral argument on the motion for summary judgment, the insurance payment of $87,125.16 was apparently not received by Hibernia until January 11, 1999, almost two months after Bakken executed the affidavit. It is unclear from the record if Hibernia was aware of this insurance payment prior to the filing of the motion for summary judgment. *149 Nonetheless, the affidavit offered in support of the motion does not reflect the insurance payment, and at the very least, a genuine issue of material fact exists concerning the actual amount owed by the Antoninis.
In fact, it is apparent from the following exchange at the summary judgment hearing that the trial court did not even determine whether the insurance proceeds were to be applied to the outstanding principal or interest:
By the Court: Accordingly, the plaintiff's motion for summary judgment is granted and the defendant is cast in judgment subject of courseand this was the only problematic part for me, Mr. Theus, as the credit permitted by the insurance proceeds that apparently was received after this suit was filed.
By Mr. Theus: Yes, sir. It was received I think January 11 of this year.
By the Court: I'm not going to answer the question today whether that payment should be attributable to principal or interest. I'll simply say the defendant is entitled to all credits as required by law.
By Mr. Theus: Yes, Your Honor. I'll work on the judgment with Mr. Butterfield. I'd probably suggest to him that we just say, "Subject a credit on January 11 of this many dollars," and that leaves open how it's applied or we can just say, "All credits."
The trial court erred in granting summary judgment in favor of Hibernia.
Because we find that a genuine issue of material fact exists regarding the amount in dispute and that summary judgment was not properly granted, it is unnecessary for this court to scrutinize the additional claims of fraud and detrimental reliance raised in opposition to the motion for summary judgment. It is also unnecessary for this court to consider the Antoninis' final assignment of error that the trial court erred in denying their motion for new trial.

DECREE
With each party paying their own costs, the judgment is REVERSED and the case is REMANDED to the trial court for further proceedings consistent with this opinion.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, DREW, and CRIGLER, JJ.
Rehearing Denied.