802 So.2d 988 (2001)
Frank SMITH, Plaintiff-Appellee,
v.
JITNEY JUNGLE OF AMERICA, Crawford and Company and National Union Fire Insurance, Defendants-Appellants.
No. 35,100-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*990 Adams and Reese LLP, by Richard B. Eason, II, Stefini Weckwerth Salles, New Orleans, Counsel for Appellants.
Cave Law Firm, by Renee Cooper Willis, Counsel for Appellee.
Before BROWN, WILLIAMS, CARAWAY, PEATROSS and KOSTELKA, JJ.
KOSTELKA, J.
Frank Smith ("Smith") was granted penalties and attorney fees by the Workers' Compensation Judge ("WCJ") who determined that Jitney Jungle of America and its insurer, National Union Fire Insurance (collectively, "the appellants"), had failed to timely pay various medical bills of Smith's. For the following reasons, we reverse in part and affirm in part the judgment of the WCJ.

FACTS
On December 15, 1995, while in the course and scope of his employment, Smith injured his back. As a result of the injury, Smith received medical treatment but has been unable to return to work and is receiving indemnity benefits from Crawford & Company, the third party administrator for the appellants.
Smith ultimately filed suit against the appellants claiming they were arbitrary and capricious for failing to timely pay six separate medical bills incurred by him as a result of his injury. The trial of the matter was scheduled for September 1, 2000 (after being continued twice), and on August 9, 2000, appellants filed their Motion for Leave to File Reconventional Demand and a Reconventional Demand, which were disallowed by the WCJ. On August 23, 2000, appellants also filed a Motion for Leave to File First Amended Reconventional Demand and a First Amended Reconventional Demand, which were also later denied by the WCJ.
The trial proceeded as scheduled, and after a full day of trial, the WCJ ruled that the appellants had been arbitrary and capricious in their handling of three medical bills incurred by Smith.[1] Those bills were: (1) $69.00 to Diagnostic Radiology Associates; (2) $92.54 to Vicksburg Medical Center; and (3) $80.00 to Dr. David Mecca ("Dr.Mecca"). Smith was awarded $2,000.00 in penalties and $5,000.00 in attorney fees for each of the first two medical bills and $500.00 in penalties and *991 $500.00 in attorney fees for the last medical bill, respectively. This appeal ensued regarding the final judgment of the WCJ. Also, appellants appeal the WCJ's refusal to allow their reconventional demands.

DISCUSSION

The Medical Bills
Appellants raise three separate assignments of error regarding the WCJ's findings on the three medical bills and the imposition of penalties and attorney fees.
Primarily, we note that pursuant to La. R.S. 23:1203(A), an "employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment" related to a worker's work-related injury. However, this duty is limited "to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less." La. R.S. 23:1203(B). Such medical benefits are required to be paid within sixty days after the employer or insurer receives written notice of the charges, with failure to do so resulting in the imposition of penalties and reasonable attorney fees. La. R.S. 23:1201(E) and (F). However, such penalties and attorney fees will not be imposed if nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F)(2).
However, a claimant is not without duty himself. The worker claiming medical benefits must prove by a preponderance of the evidence the necessity and relationship of the treatment to the work-related accident. Shields v. GNB Technologies, Inc., 33,911 (La.App.2d Cir.10/04/00), 768 So.2d 774, 780, citing, Chitman v. Davison Trucking, 28,073 (La.App.2d Cir.02/28/96), 669 So.2d 671. Additionally, "In order to recover medical expenses under Sec. 1203, the claimant must prove that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury...." Shields, 768 So.2d at 780, citing Whittington v. Rimcor, Inc., 601 So.2d 324, 329 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1366 (La.1992).
Finally, we review the WCJ's award of attorney fees and penalties under the manifest error standard. Kelley v. Jack Jackson Const. Co., 32,663 (La. App.2d Cir.12/30/99), 748 So.2d 1270, citing, Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Oliveaux v. Riverside Nursing Home, 29,419 (La.App.2d Cir.04/02/97), 691 So.2d 340.

Diagnostic Radiology Associates bill
Appellants' first assignment of error addresses the WCJ's finding that they acted arbitrarily and capriciously by failing to timely pay a bill for $69.00 to Diagnostic Radiology Associates. As a result, the appellants were assessed $2,000.00 in penalties and $5,000.00 in attorney fees, which finding we conclude was in error for the following reasons.
On April 27, 1998, counsel for Smith sent the first request to Crawford & Company requesting payment of the $69.00 bill from Diagnostic Radiology Associates. The bill reflected a date of treatment of January 21, 1997 with a brief description of the service provided; however, there was no indication that the treatment was related to Smith's on-the-job accident. In fact, the space labeled "injury date" was left blank. On June 1, 1998, Smith's counsel sent a second letter to Crawford & Company, requesting that "If payment is being denied, please forward your reason for denying *992 same to my office within the next 15 days." (Emphasis added.) Attached to the letter was a "final notice" statement from Diagnostic Radiology Associates stating the account number and amount due. Requests for payment were also made on August 18, 1998 and September 4, 1998. Penny Crawford, an adjuster for Crawford & Company, admitted at trial receiving all such letters.
On October 6, 1998, Smith's attorney sent a letter to Diagnostic Radiology Associates regarding the bill, noting that "Your notice does not reference a date of service, but I am assuming that any treatment rendered to Mr. Smith resulted from the injuries he sustained while in the course and scope of his employment with Jitney Jungle." She further stated that "workers' compensation payments are based on a fee schedule set forth by state law. If the amount due is the balance after the insurance carrier has paid your company pursuant to the fee schedule, you are not able to seek the balance from my client, Frank Smith."
First, considered on their face, the invoices sent to Crawford & Company, bore insufficient information to indicate that the treatment was necessary and related to Smith's workplace injury. The record does not reflect that Diagnostic Radiology Associates had provided treatment before nor does it appear that Smith had been treated previously at "River Oaks Hospital," which the invoice lists as the "location of service." Smith's attorney's October 6th letter to Diagnostic Radiology Associates shows her own uncertainty as to the relatedness, as she was merely "assuming" the relatedness of the treatment to the injury. Additionally, in her June 1st letter to Crawford & Company, she only asked to be informed if the claim was being denied. Considering that was not the case and that Crawford & Company was seeking to verify the relatedness of the treatment for which payment was sought from the medical provider, it was not totally unreasonable for the adjuster not to respond to Smith's attorney. Although perhaps not a favorable practice, there is no statutory or jurisprudential duty on the part of the insurer to keep a claimant's attorney apprised of every step taken in processing a workers' compensation claim.
Second, in response to the letters from Smith's attorney, appellants attempted to admit two letter requests to Diagnostic Radiology Associates dated August 31, 1998 and September 8, 1998 seeking verification that Smith's medical treatment was related to his on-the-job accident. However, the WCJ deemed the two letters inadmissible because they were only disclosed to Smith the week before trial, although a discovery request for such documentation had been made in January 1999. Appellants argue that this ruling was in error. Ultimately, Crawford & Company received the requested verification from Diagnostic Radiology Associates on December 1, 1999 and the bill was paid on January 12, 2000, within sixty days of receipt of that verification.
Among the factors to be considered in imposing sanctions for a party's failure to comply with a discovery request are the prejudice to the other party and the wilfulness of the noncomplying party. Varnell v. Louisiana Tech University, 28,266 (La.App.2d Cir.04/03/96), 671 So.2d 1238, 1241. A trial court's discretionary authority to disallow evidence at trial should be exercised only when the ends of justice dictate such exclusion. Id. at 1242.
In this case, despite the remark by the WCJ that Smith had not provided "an argument concerning the basis for how you'd be prejudiced if [the letters] were allowed," the WCJ went on to determine *993 that if the letters were admitted, Smith would suffer prejudice in that the "arbitrary and capricious conduct as alleged by [Smith]" would be lessened. This finding was made despite Smith's concession that had the letters been disclosed earlier, he may have dismissed the claim from his lawsuit. Moreover, the WCJ did not make any finding of wilfulness on the part of the appellants. The only reason offered by appellants for not disclosing the letters with their earlier discovery responses was inadvertence by appellants' counsel, who noted that the claims file was lengthy, having been open and ongoing since 1995.
Here, the disallowance of the letters evidencing appellants' investigation regarding the relatedness of the Diagnostic Radiology Associates bill to Smith's injury effectively prevented the appellants from defending the claim against them. The issue was whether or not the appellants had acted arbitrarily in delaying payment of this bill. The severe sanction of not admitting the letters resulted in the most severe result possible to the appellants' defense, especially in light of the fact that prejudice to Smith would have been minimal, and the error seems attributable to appellants' counsel and not directly to some willful action by the appellants themselves. Under these circumstances, we conclude that the WCJ abused her discretion in excluding the evidence at trial.
When Crawford & Company's letters are considered, it would be erroneous to determine that the appellants were arbitrary and capricious in their actions on this bill. The WCJ, in her oral reasons for judgment, acknowledged it was appellants' "right ... to make sure [medical bills are] reasonable and necessary, to make sure they are related to the injury in question." So considering, we conclude that the WCJ erred in not admitting the letters and thereby allowing appellants to defend the claims made against them. The letters tend to prove that the appellants were taking steps to investigate the medical bill and that such actions were not arbitrary and capricious. Thus, an award for penalties and attorney fees as to this bill was in error.

Vicksburg Medical Center Bill
Appellants' second assignment of error addresses the WCJ's finding that they acted arbitrarily and capriciously in failing to pay a bill for $92.54 to Vicksburg Medical Center. Again, penalties and attorney fees in the amount of $2,000.00 and $5,000.00, respectively, were assessed against the appellants.
On January 12, 1996, Smith incurred charges in the amount of $1,652.50 from Vicksburg Medical Center for treatment in its emergency room. It is unclear what precise amount was paid to Vicksburg Medical Center; however, it appears that a considerable amount was paid pursuant to a utilization review in 1997.
On May 4, 1999, Smith's attorney forwarded to Crawford & Company a collection notice from Vicksburg Collection Service along with her cover letter which stated that "In the event that the bill was paid pursuant to the Louisiana Workers' Compensation Fee Schedule and the remainder is not owed, I would appreciate you issuing a letter of explanation to the Vicksburg Medical Center and Vicksburg Collection Services regarding same." The notice from Vicksburg Collection Service, dated April 22, 1999, only referenced "Frank Smith" and his "account with Vicksburg Medical Center" in the amount of $92.54. There was nothing on the notice to indicate the date of treatment, the treatment rendered, or the date of injury. Nothing on the notice, other than the fact that it was regarding an account at Vicksburg Medical Center, indicated that it was even related to the treatment Smith had *994 received in relation to his on-the-job injury. That was the only request Crawford & Company received in regard to that bill. At the trial of the matter, counsel for Smith stipulated that there was no notice for payment from the medical provider, only from Vicksburg Collection Services.
Again, as in the previous medical bill discussed, the notice from Vicksburg Collection Agency on its face falls far short of meeting the duty Smith had to prove that the $92.54 allegedly due to Vicksburg Medical Center was related to his work injury. Upon receiving the bill, Richard Hostnick ("Hostnick"), an adjuster with Crawford & Company, testified that he followed up three times in an attempt to verify the relatedness of the bill to Smith's injury. Hostnick stated that he telephoned Vicksburg Collection Services shortly after receipt of the request for payment, but his call was not returned. He telephoned a second time and was told by a representative of the company he would be sent copies of the records and bills in connection with the $92.54. Hostnick admitted that a year went by before he followed up on the notice again; however, he never received another request for payment from Smith nor the information from Vicksburg Collection Services he had requested. Hostnick testified that when he finally called Vicksburg Medical Center directly, he was told that the $92.54 amount was not outstanding. Additionally, appellants offered the affidavit of Jo Ann Hoben, an employee of Vicksburg Medical Center, who averred that she was familiar with the financial records of Smith, that Crawford & Company had paid the balance due for treatment on January 12, 1996, and Vicksburg Medical Center was not seeking payment for any other fees associated with that treatment.
We note in the WCJ's oral reasons for judgment made immediately upon the conclusion of trial, the WCJ apparently considered other issues not raised by Smith among his claims against the appellants. Other than a brief mention in Smith's pretrial memorandum, no allegation was made regarding the untimeliness of the payment made in 1997 to Vicksburg Medical Center for the treatment rendered Smith on January 12, 1996. However, the WCJ states that the appellants had acted arbitrarily and capriciously in not paying the original bill of Vicksburg Medical Center until more than one year after it was incurred, although no evidence had been adduced regarding the process which was undergone by the parties before paying that bill and whether the time delay was reasonable or not.
The WCJ additionally stated that the appellants had acted arbitrarily and capriciously by destroying the records of the utilization review regarding the 1997 payment to Vicksburg Medical Center "during the litigation" which amounted to "an obstruction of justice" in this case. In civil litigation, the theory of spoliation of evidence refers to an intentional destruction of evidence for the purpose of depriving the opposing parties of its use. Hooker v. Super Products Corp., 98-1107 (La. App. 5th Cir.06/30/99), 751 So.2d 889, writ denied, 99-2911 (La.12/17/99), 751 So.2d 880 and writ denied, 99-2947 (La.12/17/99), 751 So.2d 884; Randolph v. General Motors Corp., 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, writ denied, 95-0194 (La.03/17/95), 651 So.2d 276. The presumption that evidence which a litigant fails to produce is detrimental to his case is not applicable when the failure to produce the evidence is adequately explained. Hooker, 751 So.2d at 910; Constans v. Choctaw Transport, Inc., 97-0863 (La.App. 4th Cir.12/23/97), 712 So.2d 885, 902, writ denied, 98-0408, 98-0412 (La.03/27/98), 716 So.2d 892. Here, there was no evidence *995 that the records were destroyed "during the litigation" (or that at the time the records were destroyed there was even a hint of litigation to come) in an attempt to deprive Smith of any information, only that pursuant to a record retention policy of the insurer the records of the utilization review had been destroyed at some point in time. Where suit has not been filed and there is no evidence that a party knew suit would be filed when he discarded evidence, the theory of spoliation of evidence does not apply. See, Small v. Baloise Ins. Co. of America, 96-2484 (La.App. 4th Cir.03/18/98), 753 So.2d 234, 242, writ denied, 98-1345 (La.07/02/98), 724 So.2d 733. Finally, Hostnick's testimony reveals that the utilization review regarding the bill of Vicksburg Medical Center was apparently performed by a prior third party administrator, not Crawford & Company. Clearly, any consideration by the WCJ of the circumstances surrounding the original amount due (and paid) to Vicksburg Medical Center and the records of that payment was irrelevant.[2]
Further, it is clear that attempts were made by Crawford & Company to determine if the request for payment of $92.54 was related to the injury of Smith, which investigation was reasonable in light of the obviously vague notice by Vicksburg Collection Services. Smith never met his burden of proving that the amount sought by Vicksburg Collection Services was for treatment related to his injury. Moreover, appellants provided evidence that the amount was not owed to Vicksburg Medical Center, and Smith did not rebut this assertion. Although there was argument that Smith had been damaged by the nonpayment of this bill, there was no evidence introduced to support such a claim. Therefore, we conclude the finding that appellants were arbitrary and capricious regarding the $92.54 request for payment by Vicksburg Collection Service was in error, as was the resulting award of penalties and attorney fees.

Dr. Mecca's bill
Appellants also argue that the WCJ erred in determining them arbitrary and capricious as regards the $80.00 bill to Dr. Mecca, for which they were assessed $500.00 each for penalties and attorney fees.
On September 4, 1998, Smith's attorney requested payment and forwarded an invoice to Crawford & Company for medical treatment rendered on August 10, 1998 in the amount of $80.00. Dr. Mecca, who was employed by the River Region Medical Center ("River Region"), was Smith's treating physician.
Crawford & Company requested verification of the relatedness of the treatment to Smith's work injury from River Region on September 8, 1998. On June 8, 1999, Crawford & Company made a request to Smith's attorney for "medical reports or bills" for services provided on August 10, 1998. On July 26, 1999, Crawford & Company requested verification of Dr. Mecca concerning any services provided on August 10, 1998. On the same date, a request was made again to River Region for verification of the charges.[3] On August *996 21, 1999, Crawford & Company paid the $80.00 bill, along with another bill not at issue, without ever receiving the requested verification. Finally, on September 27, 1999, Crawford & Company received the requested verification from Dr. Mecca.
Of primary importance in considering this claim is the ongoing investigation that Crawford & Company undertook as evidenced by its paper trail of correspondence. Crawford & Company clearly made a good-faith effort to investigate the claim, even requesting information from Smith's attorney on June 8, 1999. The record does not reveal a response to this request. Besides requesting information from Smith's counsel, Crawford & Company made two requests of River Region and one of Dr. Mecca, who finally responded and, notably, apologized for his delay. The WCJ acknowledged that "there was some effort" by Hostnick to investigate the bill and to correspond with Smith's attorney. Moreover, the WCJ noted that Hostnick was attentive and made "some good faith effort." Despite these considerations, the WCJ still considered appellants arbitrary and capricious due to the time period between receipt of the bill and its payment. Considering the ongoing investigation and four requests made by Crawford & Company, the delay appears to have been beyond its control. In fact, Crawford & Company finally paid the bill, ending the delay in payment unilaterally without receiving the requested verification. Therefore, the WCJ's ultimate finding of arbitrariness and capriciousness on the part of the appellants obviously contradicts her reasoning and determination that Hostnick, on behalf of Crawford & Company, had made efforts and acted in good faith. Considering the finding of a good faith effort by Crawford & Company as relates to its investigation of this bill, the WCJ's assessment of penalties and attorney fees under the circumstances was clearly in error. See, La. R.S. 23:1201(F)(2).

The Award of Attorney Fees
The foregoing obviously pretermits a discussion of appellants' fourth assignment regarding their claim that the cumulative award of $10,500.00 in attorney fees by the WCJ was excessive and, thus, in error. However, ever mindful of a WCJ's great discretion in awarding penalties and attorney fees, we note a WCJ must also be mindful that an award of attorney fees is in itself a type of penalty in workers' compensation matters. Ward v. Phoenix Operating Co., 31,656 (La. App.2dCir.02/24/99), 729 So.2d 109, 113, citing, Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.07/01/97), 696 So.2d 1382. The penalty for the behavior is the imposition of the attorney fee, rather than the amount of the attorney fee. The amount of the fee must be assessed in accordance with law, i.e., the fee must be reasonable. Ward, 729 So.2d at 113, citing, Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). Thus, the court must assess the degree of skill involved and the amount of time counsel spent representing the claimant to arrive at a reasonable attorney fee. Here, with those considerations in mind, the attorney fees awarded cumulatively appear to be excessive and, had it been necessary, would have resulted in a reduction of same.

Appellants' Reconventional Demands
We now turn to the appellants' fifth assignment of error regarding the WCJ's denial of appellants' motions to file two separate reconventional demands shortly before the trial of the matter commenced.
*997 Initially, we note that the law takes a liberal approach toward allowing amended pleadings in order to promote the interests of justice. Hibernia Nat. Bank v. Antonini, 33,436 (La.App.2d Cir.08/23/00), 767 So.2d 143, citing, Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291. However, the decision as to whether to grant a party leave to amend a pleading is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice. Hibernia Nat. Bank, 767 So.2d at 147; Hogan v. State Farm Auto Ins. Co., 94-0004 (La.App. 1st Cir.12/22/94), 649 So.2d 45, writ denied, 95-0215 (La.03/17/95), 651 So.2d 276.
Here, a Scheduling Conference Order was entered by the WCJ on January 31, 2000, setting a deadline for filing amendments to pleadings by May 1, 2000, which date was a little more than a month prior to the original trial date of June 9, 2000. Pursuant to a March 28, 2000 telephone status conference, a new trial date of September 1, 2000 was selected as reflected in the appellants' Motion to Reset Trial, which was granted by the WCJ; however, there was no request at that time to extend the previously set deadlines and no indication in the record that said deadlines were reset.
Within a month of the scheduled trial in this matter, on August 9, 2000, the appellants filed their Motion for Leave to File Reconventional Demand and their Reconventional Demand, which were denied by the WCJ on August 16, 2000, with the notation that "Amendments to pleadings were to be filed by May 1, 2000." Then, on August 23, 2000, Appellants filed their Motion for Leave to File First Amended Reconventional Demand and their First Amended Reconventional Demand, which were also denied by the WCJ, with the notation that the issue would be argued at the trial.
At the trial of the matter, argument was heard regarding both of appellants' motions to file reconventional demands.[4] After hearing argument, the WCJ decided that in consideration of the late filings and the prejudice to Smith who would have had to defend against the claims, neither reconventional demand would be allowed.
Significantly, appellants conceded that the information forming the bases for the reconventional demands had been available to them for some time prior to the filings; thus, we question the delay in filing such at the "eleventh hour" prior to trial when the claims could have easily been filed at an earlier time. Therefore, we cannot say the WCJ abused her discretion in denying the filing of either reconventional demand.

Proffer of Exhibits
The last assignment of error raised by appellants relates to the WCJ's refusal to allow the proffer of evidence related to their reconventional demands.
Louisiana C.C.P. art. 1636(A), provides in pertinent part as follows:
When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. (Emphasis added).
Although the failure by the WCJ to allow the proffer of the evidence appellants sought to introduce was technically in error, *998 being in direct contradiction of the article, we conclude that the ruling was harmless error, considering our determination there was no abuse of discretion in disallowing the reconventional demands to which this evidence related. The issue is, therefore, moot.

CONCLUSION
For these reasons, the Judgment of the WCJ assessing appellants with penalties and attorney fees for the three medical bills is reversed. The WCJ's denial of the motions regarding the appellants' reconventional demands is affirmed.
REVERSED IN PART, AFFIRMED IN PART.
BROWN, J., dissents with written reasons.
WILLIAMS, J., dissents for the reasons assigned by J. BROWN.
BROWN, J., Dissenting,
That Frank Smith was injured on the job and entitled to indemnity and medical benefits is not in dispute. What is at issue is the failure of the employer through its adjuster, Crawford & Company, to timely pay all medical bills related to Mr. Smith's care. The employer hired two medical case managers who coordinated medical treatment for Mr. Smith and secured approval for such treatment from the adjuster.
I agree with the dicta in the majority opinion that the sum awarded by the WCJ as penalties and attorney fees was excessive. However, I do not believe that the WCJ was clearly wrong in finding that the employer through its adjuster inexcusably failed to timely pay all medical bills.
The $69 charge for x-rays owed to Diagnostic Radiology Associates was incurred on January 21, 1997. When she learned that the bill had not been paid, claimant's attorney sent her first notification to Crawford & Company on April 27, 1998. In her decision, the WCJ stated:
But the bottom line is Ms. Cooper (claimant's attorney) sent at least four correspondences (actually five) to Crawford & Company and never got a response from them. I fail to understand that. It would seem to me that, and it would have gone a long way if in evidence I had received some correspondence from Ms. Crawford to Ms. Cooper if she only said, "We're working on it." But what it did was, it caused the plaintiff's attorney to continue working on this case and to continue incurring costs and attorney fees.
The $69 bill was finally paid three years later, on January 12, 2000.
Vicksburg Medical Center was a regular medical care provider for Mr. Smith in relation to his on-the-job injury. The outstanding bill of $92.54 was part of the costs for treatment rendered on January 12, 1996. Over one year after treatment, defendants paid the major part of the bill. Defendants paid $1,010.96, but inexplicably left a balance of $92.54. This balance has yet to be paid.
Dr. Mecca was Mr. Smith's regular treating physician. His $80 bill was incurred on August 10, 1998. Claimant's attorney sent a copy of the bill to Crawford and Company on September 4, 1998, but it was not paid until August 21, 1999. Why all of Dr. Mecca's other bills during this period were paid but not this $80 charge is unclear. I can not say that the WCJ was clearly wrong in concluding that "because of the long period between the receipt of the bill and the payment, it does equal arbitrary and capricious conduct."
I emphasize again my agreement with the majority dicta that "the attorney fees *999 awarded cumulatively appear to be excessive...."
NOTES
[1] The WCJ ruled in favor of the appellants on the other claims raised by Smith, which decision was not appealed by Smith.
[2] We note that Smith's claim has existed since his injury in 1995, and numerous indemnity payments and medical bills have been paid on his behalf by appellants since that time. There is no indication by the record or the parties that during that entire time any other claims have arisen against the appellants.
[3] At trial, the WCJ did not allow appellants to introduce the letters sent to Dr. Mecca or River Region for the reason that they had not been disclosed in a timely manner to Smith. For the reasons articulated previously regarding the evidence disallowed in connection with the Diagnostic Radiology Associates bill, we again conclude that this was error and the letters should have been admitted and considered by the WCJ.
[4] Following the denial of the motion regarding their first reconventional demand, the appellants filed a Motion for a New Trial or, Alternatively, Motion to Reconsider Motion to File Reconventional Demand, which was deferred by the WCJ to be argued at the trial of the matter.