792 So.2d 863 (2001)
Lillian J. SMITH, Plaintiff-Appellee,
v.
RIVERWOOD INTERNATIONAL, and Travelers Insurance Company, Defendant-Appellant.
No. 34,514-WCA.
Court of Appeal of Louisiana, Second Circuit.
July 11, 2001.
*864 Hudson, Potts & Bernstein by Jan P. Christiansen, Counsel for Appellant.
James E. Ross, Jr., Counsel for Appellee.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
WILLIAMS, Judge.
In this workers' compensation case, the employer, Riverwood International ("Riverwood"), and its insurer, Travelers Insurance, appeal the judgment of the Office of Workers' Compensation awarding the claimant, Lillian J. Smith, workers' compensation benefits, penalties and attorney's fees.[1] For the following reasons, we affirm.

FACTS
The claimant contends she was injured on July 3, 1998 during the course and scope of her employment with the defendant, Riverwood. The claimant began working for the defendant in June 1996. She was employed as a shift laborer and worked various jobs within the plant from week to week. On the day of the alleged accident, the claimant was working as a "fifth hand" on the No. 1 paper machine, and her responsibility was to assist her co-workers in preparing the rolls of paper for shipping. According to the claimant, the rolls of paper weighed four to six thousand pounds, and were approximately sixty *865 inches in diameter and five-feet tall. The claimant testified that the paper goes through a winder machine which "winds" the paper onto the roll. Thereafter, the roll of paper is lowered onto the floor. Once the roll of paper is on the floor, the fifth hand has to label the roll, tape it down and push it out to the roller track. The claimant testified that as she pushed the roll of paper toward the roller tracks, the roll of paper hit the "stoppers" on the end of the tracks and rolled back toward her, striking her on the left side of her body.
On the day of the accident, Ida Butler and Willie Wright were working with the claimant as the third and fourth hand, respectively. However, according to the claimant, neither Butler nor Wright were in the immediate vicinity when the accident occurred. The claimant testified that after the roll of paper struck her, she "braced" the roll and it again hit the stopper and landed on the track. The claimant explained that because she noticed that the paper was damaged and required re-taping, she attempted to remove the roll of paper from the track; however, she was not physically capable of doing so. According to the claimant, as another co-worker assisted her in removing the roll from the track, she observed Ida Butler nearby. At the claimant's request, Butler assisted the claimant in removing the roll of paper from the track for re-taping.
The claimant reported the accident to Norman Pruett, her immediate supervisor. The claimant was then transported to the Glenwood Medical Center Emergency Room ("Glenwood") where Dr. Charles Norwood opined that the claimant had suffered a muscle strain. He prescribed Norgesic Forte for the injury. On that day, Dr. Norwood released the claimant with permission for her to return to light-duty work four days later, on July 7, 1998.
On July 6, 1998, the claimant was treated at Glenwood by Dr. James Eppinett. She complained of minimal discomfort in her back and the lower left side of her hip. Dr. Eppinett concluded that the claimant's examination was normal; however, because of the claimant's subjective complaints of pain, Dr. Eppinett recommended that she return to work with "alternate sedentary-type duty" for one week.
On July 10, 1998, the claimant was examined at Glenwood by Dr. Stephen Horne, the defendants' company physician. The claimant complained of back pain radiating to her legs and feet. Dr. Horne did not find any objective signs of a hip or back injury and noted that he strongly suspected psycho-social overlay or malingering. He ordered a MRI of the lumbar spine and recommended that claimant undergo an orthopaedic evaluation "to either confirm or refute her subjective complaints." Dr. Horne opined that the claimant was capable of performing "light-duty work."
On July 21, 1998, the claimant was examined by Dr. Rafat Nawas. He concluded that the claimant had a musculoligamentous sprain/strain in the trunk and left hip and slight degenerative disk disease at the L4-5 level. Dr. Nawas recommended that the claimant undergo physical therapy and released her from work for two to three weeks until her follow-up examination.
On July 27, 1998, the claimant was examined by Dr. C.R. Hand, an orthopedic specialist. Dr. Hand diagnosed the claimant with a lumbosacral strain and left trochanteric bursitis. After the claimant refused an injection to the bursa, Dr. Hand recommended physical therapy. The claimant returned to Dr. Hand on August 10, 1998 for a follow-up examination. Dr. Hand found that the claimant's examination was "essentially normal." He recommended *866 that she continue her home-exercise program. He released the claimant to return to full duty work.
The insurer referred the claimant to Dr. Douglas Brown for an August 20, 1999 appointment; however, on that date, the claimant was examined by Dr. Brown's associate, Dr. Juan Racca. The claimant complained to Dr. Racca of pain in her lower back and the front and back of both legs. The claimant's physical examination was essentially normal. Dr. Racca ordered a MRI. The claimant was instructed to return for a follow-up examination on September 13, 1999. On her next appointment, the claimant was examined by Dr. Brown. He opined that the claimant had degenerative disk disease at the L4-5 level; however, he concluded that the claimant was neurologically stable. A functional capacity test revealed inconsistencies in the claimant's efforts. Nevertheless, the test revealed that the claimant could perform at a medium work level. Dr. Brown recommended that the claimant return to her present job with a restriction of lifting no more than thirty-five pounds.
Ida Butler gave a different version of the events that had occurred on the day of the accident. Based on Butler's statement and claimant's alleged inconsistent statements to her health-care providers the defendants contended the claimant was not injured during the course and scope of her employment. Consequently, they refused to pay the claimant either workers' compensation benefits or the costs of her medical treatment.
After a hearing, the WCJ found that the claimant was injured during the course and scope of her employment and that the claimant was entitled to temporary total disability benefits from July 3, 1998 through August 10, 1998, the date the claimant was released to return to work. The WCJ also found that the defendants had arbitrarily refused to allow the claimant to return to work and failed to demonstrate that the claimant could earn ninety-percent of her pre-injury wage. Therefore, the WCJ concluded that the claimant was entitled to supplemental earnings benefits beginning August 10, 1998, and continuing until the date the claimant could return to work in accordance with the restrictions imposed by her physician. The WCJ also concluded that the defendants were arbitrary and capricious in denying the claim. She awarded the claimant $2,000 in penalties and $5,000 in attorney's fees. The defendants appeal the WCJ's decision.

DISCUSSION
On appeal, the defendants contend the evidence presented at trial discredited and cast serious doubt on the claimant's version of the accident and, therefore, the claimant failed to prove by a preponderance of the evidence that she was involved in a work-related accident. The defendants further contend the claimant had previously injured her lower back years earlier and had received the same type of injury which she claimed resulted from the alleged work-related accident. According to the defendants, the fact that the claimant initially denied the previous injury casts serious doubt on her credibility and proves that the defendants had more than a reasonable basis to controvert the claimant's claim. Therefore, the defendants also challenge the WCJ's award of penalties and attorney's fees.
An appellate court may not disturb a trial court's evaluation of credibility and factual determinations unless the record reveals that the trial court's decision is manifestly erroneous or clearly wrong. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong *867 standard demands great deference to the trier of fact's conclusions because variations in demeanor and tone of voice bear heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In workers' compensation cases, an injured worker must prove, by a preponderance of the evidence, that his disability was caused by a work-related accident. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). There is no requirement under the workers' compensation law that a claimant be "totally" healed from a pre-existing illness to claim workers' compensation benefits. A claimant is only required to show that the work-related accident aggravated or accelerated a current condition. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
It is well established that a worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). If the employee's testimony contains inconsistencies and discrepancies, then the injured employee's testimony alone will not be enough to prove his or her injury occurred on the job. Harris v. General Motors, 577 So.2d 1160 (La.App. 2d Cir.1991); Macro Oil Co. v. Benjamin, 97-459 (La. App. 3rd Cir.10/8/97), 702 So.2d 915. This court is bound by the manifest error or clearly wrong standard and should not disturb reasonable inferences of fact regardless of conflicts in testimony. Kelley v. Jackson Const. Co., 32,663 (La.App.2d Cir.12/30/99), 748 So.2d 1270, citing, Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.01/01/97), 696 So.2d 551; Winford Co., Inc. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802 (La.App. 2d Cir.1990). The trial court's choice between two permissible views of the evidence can not be considered manifestly erroneous. Coley v. Wilson Oil Co., Inc., 620 So.2d 445 (La.App. 3rd Cir.1993).
The record reflects that the claimant was involved in an automobile accident in 1996. At that time, she complained of headaches, neck pain, upper back pain and lower back pain. The claimant was treated by several physicians, including Dr. Derek Finger, until October 1996. She was released from treatment and instructed to return for treatment as needed.
The defendants relied on Ida Butler's "version of the events" to dispute the claimant's claim. According to Butler, the claimant "kicked" the rolls of paper off the winder machine, which caused the rolls of paper to roll the entire distance from the winder machine to the tracks. Butler testified the claimant "kicked" the rolls of paper to avoid pushing the rolls to the tracks. Butler testified the claimant's co-workers asked her not to "kick" the rolls because that procedure damaged the paper, causing extra work for the claimant's co-workers. Subsequently, the foreman instructed the claimant to refrain from "kicking" the rolls of paper. Butler testified the claimant continued to complain of having to push the rolls. Butler further testified that she asked the claimant to push the roll off the track in order to repair the damage and claimant stated that she could not push the roll.
According to Butler, she asked Anthony Jackson, an employee on the scales, to help her to push the roll off of the track. She testified that when the next roll was ready to be pushed to the tracks, the claimant was not at her post and they continued to work without her. Butler *868 testified that the foreman later informed her that the claimant had reported that she had suffered an injury. Butler testified that other than pushing the button to "kick" the rolls off of the machine, the claimant was not involved in processing the roll of paper that allegedly caused her injury. According to Butler, she was in the area during the entire time and she did not witness the incident described by the claimant.
The WCJ did not find Butler's testimony credible. Rather, she accepted the claimant's testimony and the testimony of Tammy Lord, another Riverwood employee.
In her deposition, Lord testified that she began working for Riverwood approximately one month prior to the claimant. Lord testified that she only knew the claimant from working with her. According to Lord, the claimant was a hard worker and she completed her work well. Lord testified that approximately one week prior to the alleged accident, the claimant informed her that "she was having trouble with Ida Butler." Lord testified that Butler had also harassed her on occasions when they worked together. In reference to Butler's attitude and behavior, Lord testified, "If she's mad at you, she'll `pop' the winder." According to Lord, this "popping" causes paper to break and "then you've got slabs of paper to pull and jerk on that's (sic) heavy, heavy. She [Butler] does it for meanness because she knows it's hard work and I mean it's extremely hard."
The WCJ viewed a video tape offered into evidence by the defendants which depicted a Riverwood employee performing the duties of a fifth hand. In her "Written Reasons for Judgment," the WCJ noted:
A review of the video tape offered into evidence leads this Court to conclude that her [claimant's] statement is feasible and that the scenario depicted by her concerning the events surrounding her accident is credible. In the video tape, a worker is rolling a roll of paper without assistance and at times, she appears to be alone. Furthermore, the video tape depicts a roll of paper being rolled on the floor, striking the bumper, and bouncing back into the worker's leg. The video supports claimant's contentions; this Court finds her testimony to be credible, and the facts support this Court's conclusion that the claimant was involved in an accident within the course and scope of her employment with defendant on July 3, 1998.
The WCJ also concluded that the claimant's testimony was corroborated by the circumstances following the alleged incident. The WCJ noted that the medical evidence supported a finding that the claimant's complaints were "inclusive rather than inconsistent."
After a thorough review of this record, we conclude that the WCJ was not manifestly erroneous or clearly wrong in her findings. Butler was adamant that the injury occurred during the 3:00 p.m. to 11:00 p.m. shift. However, the record clearly reflects that on the day of the accident, the claimant arrived at the emergency room at approximately 9:30 a.m. In essence, Butler concluded that on the day of the accident, she was in a position where she could see everything and everyone at all times and, because she did not witness the alleged accident, the accident did not occur. The WCJ found that Butler's statements and presumptions were inaccurate. She therefore disregarded Butler's testimony. The WCJ chose to believe the claimant's version of the accident. The WCJ's factual findings and conclusions are reasonable inferences from the evidence presented and, therefore, we find no manifest error here.

*869 Penalties and Attorney's Fees:

The defendants also contend they reasonably controverted the claimant's claim for compensation and should not have been assessed with penalties and attorney's fees. The test to determine whether an employee's right to workers' compensation benefits has been reasonably controverted turns on whether the employer or his insurer had sufficient factual and medical information to reasonably counter factual medical information presented by the employee. Ceasar v. Crispy Cajun Restaurant, 94-30 (La.App. 3rd Cir.10/5/94), 643 So.2d 471, writ denied, 94-2736 (La.1/6/95), 648 So.2d 931. The WCJ's decision on penalties and attorney's fees is essentially a question of fact and should not be reversed unless clearly wrong. Scott v. Central Industries, Inc., 602 So.2d 201 (La.App. 3rd Cir.1992).
On the day of the accident, the claimant was examined at Glenwood and initially diagnosed with a muscle strain. Thereafter, on July 21, 1998, Dr. Nawas diagnosed the claimant with musculoligamentous sprain and/or strain of the trunk and left hip, and slight degenerative disk disease at the L4-5 level. Moreover, Dr. Brown, the physician chosen by the defendant, opined that the claimant suffered from degenerative disk disease at the L-5 level, and that the claimant's complaints were consistent with the type of injury she would have experienced as a result of the accident.
Further, the record reflects that at the time of the accident, the claimant had recovered from the injuries she had suffered in the automobile accident some two years earlier. Moreover, had defendants fully investigated the case, they would have realized that Butler's statements concerning the date and time of the accident were inconsistent with the date and time revealed in the claimant's statements and the medical records.
Therefore, we find that the defendants failed to present sufficient factual and medical information to reasonably controvert the claimant's version of the accident and the medical evidence in the record. Accordingly, we also affirm the WCJ's award of penalties and attorney's fees.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to the defendants, Riverwood International and its insurer, Travelers Insurance.
AFFIRMED.
KOSTELKA, J., concurs in part and dissents in part with written reasons.
KOSTELKA, J., concurring in part and dissenting in part.
On the record before us, I can concur that the Workers' Compensation Judge ("WCJ") was not manifestly wrong for accepting the claimant's evidence and rejecting defendants' evidence, even though the same WCJ has now, apparently, subsequently ruled, while this appeal was pending, that the claimant had forfeited her rights to benefits due to some false testimony or representation. That subsequent ruling is not before this Court and defendants have requested no relief. However, defendants did appeal the award of penalties and attorney fees and I respectfully dissent from our affirmance of that award. The WCJ can, of course, choose who to believe or disbelieve, but the employer/defendants should not be penalized for believing valued, long-time employees who contradicted claimant as to even the occurrence of an on-the-job accident, particularly *870 where now the claimant's credibility has apparently been subsequently destroyed.
NOTES
[1] The defendants have submitted a letter with a judgment from the Office of Workers' Compensation attached, which decrees that the claimant has forfeited her right to any and all workers' compensation benefits with respect to the July 3, 1998 work-related accident. However, because the defendants have not filed any formal requests to this court, the May 3, 2001 judgment is not before us.